DETERMINED IN THE·

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

## NOVEMBER TERM, 1883.

---

### WILLIAM BERNSHOUSE v. JOHN C. ABBOTT.

A purchaser from an agent having authority to sell, and selling in his own name without disclosing his principal, is not entitled, in an action by the principal for the contract price, to set off a debt due to him from the agent, where the agent had neither the possession nor the *indicia* of property in himself.

---

On error to the Supreme Court.

For plaintiff in error, *Garrison, French* and *Casselman*.

William Bernshouse bought of one Joseph E. P. Abbott two car-loads of cedar siding. The lumber was delivered to Bernshouse according to contract, accompanied by bills for the price of the same, in the name of said Joseph E. P. Abbott. Bernshouse was the holder for value of three promissory notes of said Joseph E. P. Abbott, amounting to about the price of

the lumber, and tendered them in payment of Abbott's bill. Joseph E. P. Abbott then wrote to Bernshouse, stating that in disposing of the lumber he had acted as the agent of another person. This suit was brought against Bernshouse for the price of the lumber. The plaintiff is John C. Abbott, the father of Joseph E. P. Abbott. The declaration consists of the common counts, with bill of particulars. The defendant, Bernshouse, pleaded the general issue, and a special plea of set-off of the debt of the agent to the demand of the plaintiff, to which the plaintiff replied by traversing the matters of fact, and, on the issue so joined, the parties went to trial. At the trial the court overruled a motion to non-suit, and at the conclusion of the case ordered a verdict for the plaintiff, without permitting the case to go to the jury.

The matters assigned for error arose both upon the motion to non-suit, and the charge of the court.

The plaintiff's case was this : That he owned the logs; that the sheriff had them under levy; that the sheriff's execution was against the plaintiff and his two sons for a joint debt; that the sheriff authorized one of the sons, Joseph E. P. Abbott, to dispose of the lumber at private sale; that the money so raised was to be paid by Joseph E. P. Abbott to the sheriff to pay off said execution; that he, the plaintiff, also authorized this same son to dispose of the lumber for this same purpose; that the son did dispose of the lumber to defendant and delivered it to him; that he, the plaintiff, did not disclose himself in the transaction until after the delivery of the lumber, and the trouble about the set-off arose.

I. Motion for non-suit was made by defendant on plaintiff's own showing, because, under the issue, it was incumbent on plaintiff to show that in this sale he was the principal, *i. e.*, that the authority of the agent came from him. That the facts had not only failed to show this, but on the contrary had shown :

1. That plaintiff himself had not the authority to dispose of this lumber, it being in the sheriff's hands.

2. That such authority as he had as to the custody or disposal of the lumber levied on, he had as agent of the sheriff, a personal trust which he could not re-delegate. *Casher* v. *Peterson*, 1 *South.* 317; *Lloyd* v. *Wyckoff*, 6 *Halst.* 219; *Sterling* v. *Van Cleve*, 7 *Halst.* 294; *Bank* v. *Hann*, 4 *Harr.* 166; *Caldwell* v. *Fifield*, 4 *Zab.* 155; 2 *Inst.* 597; *Broom's Legal Maxims* 806; *Fector* v. *Beacon*, 5 *Bing. N. C.* 310.

. 3. That the real source of the agent's authority was, at the time of sale, alien to the plaintiff because of the levy.

4. That the relationship betwen plaintiff and Joseph F. P. Abbott in this transaction was that of partners, a fatal variance under the issue.

The facts showed that this transaction was one arranged by father and son, with their creditors, to pay off a joint debt by joint effort. The father furnished the capital—to wit, the lumber—the son the services, and that the profits were to be shared in the payment of a joint debt.

As to third parties, to whom the lumber was sold, they were partners. *Rowland* v. *Long*, 45 *Md.* 439; *Sheridan* v. *Medara*, 2 *Stockt.* 469; *Voorhees* v. *Jones*, 5 *Dutcher* 270; *Brundred* v. *Muzzy*, 1 *Dutcher* 268; 1 *Collyer on Part.* 78.

The court overruled this motion. In so doing the court affirmed that the facts in the case showed that the relationship between father and son was that of principal and agent, and that the authority which the agent had exercised in disposing of the lumber to the defendant, was derived by the agent from the plaintiff.

II. Under the special plea and the charge of the court defendant's plea is good in law. *Carr* v. *Hinchliff*, 4 *B. & C.* 547; *Purchell* v. *Salter*, 9 *Dowl.* 520; *Borries* v. *Imperial Ottoman Bank*, 29 *L. T.* (*N. S.*) 689.

The law is well established and uniformly applied, that if an agent entrusted to sell goods of his principal do so in his own name, and without disclosing that he is a mere agent, to a purchaser who takes him to be the owner, in a suit for the price, by the principal, the purchaser will be allowed any set-offs he would have if the agent had brought suit in his own

name. *George* v. *Claggett*, 7 *T. R.* 359; *Smith's Lead. Cas.* 2, 19, 111; *Rabone* v. *Williams*, 7 *T. R.* 356, *note*; *Coates* v. *Lewis*, 1 *Camp.* 444; *Capel* v. *Thornton*, 3 *Car. & P.* 352; *Taylor* v. *Kymer*, 3 *B. & Ad.* 320, 334; *Carr.* v. *Hinchliff*, 4 *B. & C.* 547; *Sims* v. *Bond*, 5 *B. & Ad.* 393; *Purchell* v. *Salter*, 9 *Dowl.* 520; *Pratt* v. *Willey*, 2 *Car. & P.* 350; *Ramazotti* v. *Bowring*, 7 *C. B.* (*N. S.*) 851, (a carefully considered case); *Re Henley*, 35 *L. T.* (*N. S.*) 644, (this case holds that if agent sell in his own name, even if principal did not authorize it, the set-off will be allowed); *Hogan* v. *Shorb*, 24 *Wend.* 458, (a case very similar to this one); *Pratt* v. *Collins*, 20 *Hun* 128, (also a strong case;) *Kelly* v. *Munson*, 7 *Mass.* 319; *Huntington* v. *Knox*, 7 *Cush.* 371; *Bank* v *Plimpton*, 17 *Pick.* 159; *Adm'r of Conyers* v. *Magrath*, 4 *McCord* 392; *Pell* v. *Shepherd*, 58 *Ga.* 365; *Eclipse Wind Mill Co.* v. *Thorson*, 46 *Iowa* 181; *Traub* v. *Milliken*, 57 *Me.* 63; 2 *Kent* 632; 1 *Parsons on Cont.* 53; *Chitty on Cont.* 225; *Story on Agency* 419; *Paley on Agency* (by *Lloyd*) 325, 329; *Gardner* v. *Aller, Ex'r*, 6 *Ala.* 187, 41 *Am. Dec.* 45.

The plaintiff traversed the substantial averments of this plea, and much evidence was adduced in support of these allegations and denials. This issue of fact should have been passed upon by the jury under instructions.

The court took the case from the jury and directed verdict for plaintiff solely on one ground, viz., that this "agent" did not "in any sense have possession of this lumber." This was error.

This rule of law evoked by the plea is, that the vendee may offset to a suit by a previously undisclosed principal, a claim against the agent, when the agent has been permitted by the principal to figure as the owner of the goods, and in that character to deceive the vendee.

Under the issue joined on this plea there are two essential questions of fact:

1. Did the agent hold himself out to the defendant to be the owner of the goods, so that the defendant dealt with him as such?

2. Did the plaintiff render it possible for his agent so to act?

The latter question goes to the equity and heart of the rule, but it is a question for the jury under instruction; much evidence bearing directly on these questions was adduced at the trial.

The court below proceeded upon the theory that there were no facts from which a jury could find that this agent " had in any sense possession of the lumber," and that as a matter of law, unless he had *possession*, the rule evoked did not apply.

1. As to the fact of possession, it was for the jury.

That the agent sold and delivered the goods, by transfer of possession to defendant, is the foundation of plaintiff's suit. Here, then, are facts showing the highest act of possession conceivable, namely, disposal. That the agent derived his authority to dispose of the lumber from plaintiff was affirmed by the court itself, or else he must be non-suited. It is in evidence that the sheriff, who was in *possession* under levy, by the consent of the attorney of creditors, surrendered his possession to the agent and authorized him to dispose of the goods, and that he did dispose of them to defendant. Surely these are facts from which a jury might find whether this agent had " in any sense possession of this lumber."

In unwieldy articles, such as logs, manual possession is never had; whether the agent had such possessory control as the article was capable of was a legitimate inquiry for the jury.

When the subject of sale was not only bulky, but also fastened by a sheriff's levy, and yet the plaintiff claims that he sold and delivered them by his agent, whether such agent had not, by plaintiff's permission, exercised all the possessory acts which the subject was capable of, was a pertinent and rational question for the jury.

2. As to the law.

The charge of the court was error, in so much as it did not correctly conceive the question which should have been left to the jury.

The charge was that *possession* was the one esssential, and that there were no facts going to show possession.

The question for the jury, as the court conceived it, was, "Had the plaintiff entrusted the corporeal possession of certain goods to his agent?" This is too narrow. The true question for the jury was, "Did the plaintiff, by his conduct, so entrust the agent in the disposal of this lumber, that the agent was enabled to hold himself out as the owner, and did he so hold himself out?"

Upon these questions of fact there was ample testimony, and the case should go to the jury upon them.

That this is the true question for the jury, rather than the bare fact of possession, is evident from the adjudications cited. See also, particularly, *Baring* v. *Corrie*, 2 *B. & Ald.* 137.

This early case first laid down the gist of this rule of law, and has since been followed; it should, however, be read in connection with *Blackburn on Contract of Sale, ch.* 5, in which the definition, law, statutes and mercantile usage as to *brokers* are fully discussed. *Ramazotti* v. *Bowring*, 7 *C. B.* (*N. S.*) 851, 856; *Dyer* v. *Pearson*, 3 *B. & C.* 38–42; *Long on Sales* (*Rand's ed.*) 418; *Law* v. *Stokes*, 3 *Vroom* 253, in which the principle is admitted.

III. Now take the ruling of the court on the same motion to non-suit, and its final ruling on the question of fact, and observe the dilemma.

The question put to the court on both occasions was, Are the facts going to show that this agent's authority to dispose of the lumber was derived from the plaintiff?

On the motion to non-suit, the court said "Yes; it is fully shown." In its final ruling, it said, "No, not a fact to go to the jury on."

This is a question which can be answered categorically; to the defendant it can make little difference what that answer be; if "yes," then the case should have gone to the jury; if "no," then the motion to non-suit should be granted.

For the defendant in error, *D. J. Pancoast.*

This was an action of *assumpsit*, brought by the defendant in error, John C. Abbott, against the plaintiff in error, William Bernshouse, for the amount of a bill of lumber, which, through the agency of his son, Joseph E. P. Abbott, he sold to Bernshouse.

The defendant below pleaded that Joseph E. P. Abbott was the agent and factor of his father, the plaintiff, and was entrusted with the possession of the lumber in question in his own name, as the true and sole owner thereof, and that he did not know and had no means of knowing but that the said Joseph E. P. Abbott was the true and only owner thereof.

And that the said Joseph E. P. Abbott, at the time of the said sale, was indebted to him in the full amount of the said bill, which he was willing and ready to set off against the amount of the same.

At the trial it was proved that the lumber in question was the property of the plaintiff, John C. Abbott, a man aged about eighty years, who, wishing to sell it to pay and satisfy an execution against himself, got his son, Joseph E. P. Abbott, to find a purchaser for it; that his son met Bernshouse, a contractor and builder, with whom he was well acquainted, and agreed to sell it to him. Nothing was said between the parties to the sale as to the right of the seller to the lumber. It was sold as lumber of a certain character and quality, without any reference to its ownership or whereabouts. Bernshouse did not want the lumber for use at the time he agreed to purchase it. At that time he had a secret claim against the son, in the form of over-due notes of his, that he had purchased. He knew that he was an attorney-at-law and that he was reputed to be insolvent, but without any inquiry at all, taking it for granted that the timber was his own, he agreed to buy it for the sole purpose of getting payment of his notes by way of offset against the price. At the time of the sale the lumber was on the father's land, not wholly cut. It was all delivered by the father, and no part of it was ever in the pos-

session or custody of his·son, who sold it. All the son had to do with it was to find a purchaser and report him to his father, ·who got the timber together and delivered it.   The son had no authority to sell the timber as his own, nor did he do so, and the weight of the evidence is to the effect that he stated to Bernhouse, pending the negotiations for ·the sale, that it· was his father's lumber.   Upon this state of facts the court below directed.a verdict for the plaintiff, to which the defendant took exception.

The essential elements of the defendant's special plea were· not proved.

The evidence did not show that the son was the agent and factor of his father, entrusted with the possession of the timber as his own property.

Nor did it show any authority, in any way or manner, from the father to the son, to sell the timber as his own.

Nor did it show that the father clothed his son with the *indicia* of title in such a way as to mislead Bernshouse into dealing with his son as the real owner.

The undisputed facts were, that the father did nothing more than to accept the gratuitous help of his son to find him a purchaser for his timber ; for that alone the law will not deprive him of his property.

No man can be deprived of his· property lawfully except by a voluntary transfer by his own act, or by an involuntary transfer or forfeiture by his own default.

No agent, clothed with the simple authority to sell his principal's property, can give it away in payment of his own debts while it is yet in the hands of his principal ; otherwise any agent goes forth from his principal armed with the power to destroy him.

In a commercial country like ours, where much of the business is done by agents, it is highly important that their powers be kept within safe and proper limits.

The right of a purchaser to set off against a principal a debt due from his agent, has generally been limited to cases of factors having possession, and a special property in the goods

of the principal, and who, by the custom of trade, are entitled to sell them as their own. The distinction between this right of set-off as against factors and brokers or other agents, is clearly set out in the leading case of *Baring* v. *Corrie*, 2 *B. & Ald.* 137.

In *Semenza* v. *Brinsley*, 18 *C. B.* (*N. S.*) 467, where a similar right of set-off was claimed, the court said : " In order to make a valid defence within the rule above stated, it is obvious that the plea should show that the contract was made by a person whom the plaintiff had entrusted with the possession of the goods; and that that person sold them as his own goods, in his own name as principal, with the authority of the principal."

In *Warner* v. *Martin*, 11 *How.* 227, the Supreme Court of the United States, speaking as to a factor's power to bind his principal by a disposition of his goods, stated the common law rule to be " that to acquire a good title to the employer's property by purchasing it from his agent, such purchase must have been either in market overt and without knowledge of the seller's representative capacity, or from an agent acting according to his instructions, or from one acting in the usual course of the employment, and whom the buyers did not know to be transgressing his instructions, or that he had not such notice as the law deems equivalent to raise that presumption."

The doctrine of these cases has been very recently affirmed by the Supreme Court of Ohio, in a case identical with the one under consideration. *Crosby* v. *Hill*, 15 *Rep.* 758.

And it is expressly held that possession alone does not clothe an agent with the power to give the purchaser, however innocent, the right of property against the owner. To accomplish this result, the owner must not only have entrusted his agent with the possession, but have given the agent some additional means of imposing himself on others as the true owner. *Taylor* v. *Pope*, 45 *Tenn.* 413; *Potter* v. *Dennison*, 10 *Ill.* 590; *Law* v. *Stokes*, 3 *Vroom* 251, 252; *Warner* v. *Martin*, 11 *How.* 224, &c. ; *Mason* v. *Galbraith*, 14 *Rep.* 608 ; *Emery* v. *Gordon*, 6 *Stew. Eq.* 447.

The defendant below framed his plea upon the doctrine of these cases, but his proof fell far short of establishing it, and the court was entirely right in rejecting his defence, which was a complete failure, measured by the defendant's own standard of the law, as set up in his plea.

The opinion of the court was delivered by

DEPUE, J.   The transaction was a sale of personal property by an agent who had authority to sell, and who sold in his own name without disclosing his agency, to a purchaser who bought in good faith, believing that the agent was the owner, and the inquiry is, under what circumstances such a purchaser, in an action by the principal for the contract price, is entitled to set off a debt due him from the agent.

The son, when he negotiated the sale, had neither the possession of the property nor any muniment of title to it in himself.   He sold it in his own name, without any authority from his father to sell it in that way.

The two leading cases on the subject of the right of a purchaser of personal property to set off a debt due to him from the agent through whom the sale was made, where an action has been brought by the principal to recover the contract price, are *Rathbone, Jr.,* v. *Williams,* reported in a note to *George* v. *Claggett,* 7 *T. R.* 359, and *Baring* v. *Corrie,* 2 *B. & Ald.* 137.   In Rathbone *v.* Williams, the action was for the value of goods sold.   The sale was made through Rathbone, Sr., & Co., who were the plaintiff's factors, and had sold the goods in their own names as principals, without disclosing their agency.   The purchaser, in an action by the principal for the contract price, was allowed to set off a debt due to him from the factors.   In Baring *v.* Corrie, the sale was made by a broker, who did not disclose his principal; and the purchaser, in an action for goods sold, brought by the principal, was not allowed to set off a debt he had against the broker.

The distinction between these two cases is explained by Abbott, C. J., in his opinion in Baring *v.* Corrie.   He says: "The distinction between a broker and a factor is not merely

nominal, for they differ in many important particulars. A factor is a person to whom goods are consigned for sale, * * * and he usually sells in his own name, without disclosing that of his principal. The latter, therefore, with a full knowledge of these circumstances, trusts him with the actual possession of the goods, and gives him authority to sell in his own name. But the broker is in a different situation. He is not trusted with the possession of the goods, and he ought not to sell in his own name. The principal, therefore, who trusts a broker has a right to expect that he will not sell in his own name." And, referring to the cases cited in which the set-off had been allowed, including Rathbone *v.* Williams, the Chief Justice said that "in all the cases cited, the factor was in actual possession of the goods, and the purchaser could not know whether they belonged to him or not, and at all events, they knew that he had a right to sell the goods." In Baring *v.* Corrie, where the claim of set-off was disallowed, the property sold was not in the possession of the broker who negotiated the sale. It was lying in the West India docks, from which it could not be obtained without a delivery order, countersigned by the plaintiffs' custom-house clerk; and, as was said by Bailey, J., "the plaintiffs did not trust the broker with either the muniments of their title or the possession of the goods, as was done both in the case of Rathbone *v.* Williams and that of George *v.* Claggitt."

The language of Abbott, C. J., and Bailey, J., quoted from Baring *v.* Corrie, is quoted with approval by Cresswell, J., in *Fish* v. *Kempton*, 7 *C. B.* 687, 693. And the distinction between a factor having the possession of the goods with power to sell, under the usages of trade, and a broker or other agent who has not such possession, has been adopted as settled law in cases where the right to set-off has arisen—the right to a set-off being recognized only where the sale was made by a factor. *Carr* v. *Hinchliff,* 4 *B. & C.* 547; *Purchell* v. *Salter,* 1 *Q. B.* 197; *Semenza* v. *Brinsley,* 18 *C. B.* (*N. S.*) 467, 477, per Willes, J.; *Ex parte Dixon,* 4 *Ch. Div.* 133; *Eorries* v.

*Imperial Bank, L. R.,* 9 *C. P.* 38 ; *Hogan* v. *Shorb,* 24 *Wend.* 458, 462 ; 2 *Kent* 633.

*Ramozetti* v. *Bowring,* 7 *C. B.* (*N. S.*) 851, is also an important case in this line of decision. The action was brought for a bill of wine sold and delivered to the defendants. The plaintiff carried on the business of a wine merchant, under the name of the Continental Wine Company. The business was conducted by one Nixon, the plaintiff's son-in-law. Nixon, representing himself to be the proprietor of the Continental Wine Company, induced the defendants to take the goods in question in part satisfaction of his debt to them. The defendants contended that the goods having been sold by Nixon, the agent, without disclosing his principal, the contract could not be enforced by the latter, discharged of the defendants' right of set-off. The Common Serjeant left it to the jury to say whether the plaintiff or Nixon was the real owner of the business, telling them to find for the defendants if they were of opinion that Nixon was the owner ; but if they thought the plaintiff was owner they must find for him. The court *in banc* held this to be a misdirection, and that the proper question was whether the plaintiff had so conducted himself as to enable Nixon to hold himself out as the proprietor, and whether the defendants dealt with him on that footing.

Mr. Chitty, with characteristic exactness, states the principle to be that "Where a principal permits one who is not known to be an agent to sell as apparent principal, and afterwards intervenes, the buyer is entitled to be placed in the same situation at the time of the disclosure of the actual principal as if the agent had been the real contracting party ; and he is entitled to the same defence against the principal, whether it be by common law or by statute, as he was entitled to at that time against the agent, the apparent principal. Accordingly, if in such a case the defendant has acquired a set-off against the agent, before the principal has interposed, the latter will be bound by the set-off." "But," he adds, "this doctrine does not apply where the agent is a mere broker,

,and has not the possession of or is not intrusted with the *indicia* of property in the goods." *Chitty on Cont.* 306.

In the case now before the court the son had neither the possession nor the *indicia* of property. He was an agent with a naked power to sell. The judge properly denied the defendant's claim to set off the son's debt, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, MAGIE, PARKER, SCUDDER, VAN SYCKEL, CLEMENT, COLE, GREEN, KIRK, PATERSON, WHITAKER. 15.

*For reversal*—None.